**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF ARKANSAS**
**FAYETTEVILLE DIVISION**

**CODY KIDD,**                                                                                 **PLAINTIFF**
**Individually and on Behalf of All**
**Others Similarly Situated**

**V.**                                                    **CASE NO. 5:25-CV-5032**

**TYSON FOODS, INC.**                                                                  **DEFENDANT**

## MEMORANDUM OPINION AND ORDER

Before the Court is Plaintiff Cody Kidd's Motion for Conditional Certification (Doc. 16) and Brief in Support (Doc. 17) of a collective action under the Fair Labor Standards Act ("FLSA"). The Motion also asks the Court to approve notice and consent documents to be distributed to the proposed opt-in members of the collective action. On October 28, 2025, Defendant Tyson Foods, Inc. ("Tyson") filed a Response in Opposition (Doc. 21) stating several objections to the Motion. Kidd filed a Reply (Doc. 26) on November 19, 2025, with exhibits attached. Tyson subsequently filed a Motion to Strike (Doc. 27) Kidd's Reply on December 5, 2025, and a Sur-Reply (Doc. 30) on December 8, 2025, and Kidd filed a Response in Opposition (Doc. 33) to Tyson's Motion to Strike on January 2, 2026. For the reasons stated below, Kidd's Motion for Conditional Certification (Doc. 16) is **GRANTED IN PART AND DENIED IN PART** and Tyson's Motion to Strike (Doc. 27) is **DENIED AS MOOT**.

## I. BACKGROUND

Kidd filed his Complaint (Doc. 2) on February 18, 2025, seeking relief pursuant to the FLSA, 29 U.S.C. § 201 et seq., and the Arkansas Minimum Wage Act, Ark. Code Ann. § 11-4-201 et seq. Kidd now moves for conditional certification of a collective action

1

pursuant to the FLSA, 29 U.S.C. § 216(b). The FLSA is a federal statute governing minimum wages, maximum hours worked, and overtime compensation. The statute allows an action to be brought "by any one or more employees for and in behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). This type of lawsuit requires that each potential plaintiff "opt in," or "give his consent in writing to become such a party" to a collective claim for unpaid wages. *Id.*

From October 2020 to May 2023, Kidd was employed in Fayetteville, Arkansas, at a subsidiary of Tyson called Tyson Mexican Original, Inc. ("Mexican Original").  The Mexican Original facility produces three different types of products: tortillas, taco shells, and tortilla chips. Kidd was first hired to work at Mexican Original as a forklift driver. He was promoted to warehouse supervisor in May 2022 and eventually became a production supervisor of the tortilla line in December 2022.

As a production supervisor, Kidd was paid on a salary basis and was classified as exempt from the FLSA's hourly wage and overtime requirements. In this position, Kidd's primary job duties were to ensure the tortilla department's production lines were both running properly and profitable. According to Kidd's deposition, a production manager told Kidd and other production supervisors that it was their responsibility to keep the production lines running "no matter what," even "[i]f that meant [the production supervisors] had to stand on the line and work on the machines." (Doc. 21-3, 47:16–23 (Kidd Dep.)).[1] It was standard practice for production supervisors to be working line positions for the majority of their shifts while filling in for hourly line workers who were absent or on a break. *Id.* at 48:21–25; 49:1–7. Due to his salaried status, Kidd was never

---

[1] All transcript citations refer to the transcript pages.

2

paid overtime while working as a production supervisor, despite frequently working more than 40 hours per week. He ultimately ended his employment at the Mexican Original facility in May 2023 after finding "a different job that offered [him] better worklife balance." *Id.* at 152:21–25.

Kidd now brings this action alleging that he and other production supervisors were uniformly misclassified as exempt from the FLSA's hourly wage and overtime requirements, even though they spent most of their worktime performing the same or similar duties as those performed by the hourly paid employees. In the present motion, Kidd asks the Court to conditionally certify, pursuant to the FLSA, the following collective: "All Production Supervisors employed by Defendant since February 18, 2022." (Doc. 16, p. 1). Thus, Kidd's lawsuit is a putative nationwide collective action brought on behalf of all current and former production supervisors working at Tyson facilities. Two opt-in plaintiffs have filed notices of consent to join. *See* Doc. 2-3; Doc. 20-1.

One of the consent-plaintiffs, Macias Facundo, has already been deposed in this case. According to his deposition, Facundo works at a Tyson Fresh Meats, Inc. ("Fresh Meats") facility in Amarillo, Texas, and has never worked for any other Tyson plant. (Doc. 21-5, 40:23–41:3 (Facundo Dep.)). He first became a production supervisor at Fresh Meats in 2003 and held that role for several years. *Id.* at 47:18–23. He briefly returned to an hourly position before resuming the role of production supervisor, where he has remained ever since. *Id.* at 47:23–48:5; 49:23–25. The Fresh Meats facility in Amarillo cuts, cleans, and prepares meat products for shipment. *Id.* at 61:17–63:2; 64:18–65:5. The facility contains different divisions, such as the meat processing department; case sealer department; packaging department; and freezing department. *Id.* at 61:17–25.

3

Tyson opposes Kidd's Motion to Certify, arguing that (1) Tyson's affirmative defenses will require individualized analysis of each opt-in plaintiff's job duties; (2) Kidd and the consent-plaintiffs are not similarly situated due to the differing facilities and departments in which they work; and (3) Tyson itself does not employ any production supervisors.

## II.  LEGAL STANDARD

The FLSA authorizes collective actions under § 216(b), but the statute is silent as to what standards and procedures courts should use to determine whether a putative collective is "similarly situated" as to allow notice to be sent to the potential members. Nor has the Eighth Circuit announced standards that district courts must use in evaluating FLSA collective actions. In the absence of such guidance, numerous district courts in this Circuit, including this Court, have approved of the two-step certification process laid out in the Fifth Circuit case *Mooney v. Aramco Services Co.*, 54 F.3d 1207, 1212 (5th Cir. 1995), *overruled on other grounds by Desert Palace, Inc. v. Costa*, 539 U.S. 90 (2003). *See Godwin v. K-Mac Enters., Inc.*, 2020 WL 1044016, at *1 (W.D. Ark. Mar. 4, 2020) (citing *Mooney* for the prevailing approach used by district courts in the Eighth Circuit for certifying collective actions); *Garrison v. ConAgra Packaged Foods, LLC*, 2013 WL 1247649, at *1 (E.D. Ark. Mar. 27, 2013) (same); *Shackleford v. Cargill Meat Sols. Corp.*, 2013 WL 209052, at *1 (W.D. Mo. Jan. 17, 2013) (same).

The certification process in *Mooney* involves a progressively more rigorous analysis of whether a putative class of plaintiffs are similarly situated and thus suited for the collective action model as a means of efficiently litigating their claims. Under this approach, certification for a collective action is divided into two stages: (1) the notice stage

and (2) the opt-in or merits stage. *Mooney*, 54 F.3d at 1213–14. "At the notice stage, the district court makes a decision—usually based only on the pleadings and affidavits which have been submitted—whether notice of the action should be given to class members." *Id.* "Because the Court has minimal evidence," the determination as to whether putative members are similarly situated enough to allow for notification "is made using a fairly lenient standard . . . ." *Id.* at 1214. While the plaintiff's burden of proof at the notice stage remains relatively low, "some identifiable facts or legal nexus must bind the claims so that hearing the cases together promotes judicial efficiency." *Jost v. Commonwealth Land Title Ins. Co.*, 2009 WL 211943, at *2 (E.D. Mo. Jan. 27, 2009) (quoting *Barron v. Henry Cnty. Sch. Sys.*, 242 F. Supp. 2d 1096, 1103 (M.D. Ala. 2003)).

District courts in this Circuit have considered a variety of factors—no single one of which is dispositive—in determining whether the plaintiff and proposed class members are similarly situated. These factors include: (1) whether they hold the same job title; (2) whether they work or worked in the same geographic location; (3) whether they were subjected to the same policies and practices, established in the same manner by the same decision-maker; (4) whether the alleged violations occurred during the same time period; and (5) the extent to which the acts constituting the alleged violations are similar. *Watson v. Surf-Frac Wellhead Equip. Co., Inc.*, 2012 WL 5185869, at *1 (E.D. Ark. Oct. 18, 2012) (citing *Grayson v. K Mart Corp.*, 79 F.3d 1086, 1097–99 (11th Cir. 1996)). "Arguments concerning the merits of plaintiffs' claims and the impropriety of individualized inquiries in collective actions are inappropriate for consideration at the conditional certification stage." *Adkinson v. Tiger Eye Pizza, LLC*, 2019 WL 5213957, at *6 (W.D. Ark. October 16, 2019) (citation modified).

"If notification is deemed appropriate, the class is conditionally certified for notice purposes and the action proceeds as a representative action throughout discovery." *Murray v. Silver Dollar Cabaret, Inc.*, 2017 WL 514323, at *2 (W.D. Ark. Feb. 8, 2017). "[W]hen discovery is largely complete, the defendant may move for decertification, and the court will consider" the merits and "other factors to determine whether the conditionally certified class should be permitted to proceed as a collective action." *Id.* (internal citation omitted).

Since this case is at the "notice stage," the Court need not make findings on legal issues or focus on whether there has been an actual violation of the law. *Godwin*, 2020 WL 1044016, at *2. Similarly, the Court is not expected to make credibility determinations or resolve disputes over contradictory evidence in this initial stage. *Id*. Instead, the question before the Court is whether Kidd has demonstrated he is similarly situated to the putative collective. Kidd need only show a "colorable basis" that Tyson's policies violated the FLSA. *Bouaphakeo v. Tyson Foods, Inc.*, 564 F. Supp. 2d 870, 893 (N.D. Iowa 2008). "Such a showing can be made with minimal evidence that the putative collective action members were victims of a common policy or plan that may have violated the FLSA." *Hamilton v. Diversicare Leasing Corp.*, 2014 WL 4955799, at *2 (W.D. Ark. Oct. 1, 2014) (citing *Thiessen v. Gen. Elec. Cap. Corp.*, 267 F.3d 1095, 1102 (10th Cir. 2001)). "However, unsupported assertions of widespread violations are not sufficient to meet Plaintiff's burden." *Freeman v. Wal-Mart Stores, Inc.*, 256 F. Supp. 2d 941, 945 (W.D. Ark. 2003).

### III.  DISCUSSION

### A.  Conditional Certification

To start, Tyson asks this Court to deviate from the two-stage approach and instead consider the merits at this juncture. Tyson claims that Kidd and any opt-in plaintiffs fall within the executive, administrative, and combination exemptions to the FLSA's minimum wage and overtime requirements. *See* 29 U.S.C. § 213(a)(1); 29 C.F.R. § 541.708. Tyson argues that "[d]etermining whether each individual was misclassified as exempt and thus entitled to overtime pay would require a highly individualized, fact-intensive inquiry into each employee's actual job duties" and thus should not be "resolved on a collective basis." (Doc. 21, pp. 27, 34). However, this Court has expressly declined to depart from the *Mooney* approach on multiple occasions. *See, e.g., Burris v. Baxter Cnty. Reg'l Hosp., Inc.*, 2024 WL 3454979, at *2 (W.D. Ark. July 18, 2024); *Thornton v. Tyson Foods, Inc.*, 683 F. Supp. 3d 885, 888–90 (W.D. Ark. 2023). Therefore, merits issues will not be considered at the notice stage. Instead, should significant individualized questions arise during discovery, Tyson will have an opportunity to move for decertification at the second stage.

Next, Tyson argues that Kidd has not sufficiently demonstrated that the putative collective is similarly situated. According to Tyson, Kidd has "failed to show the existence of a uniform job structure or job duties across the proposed collective." (Doc. 21, p. 20). For example, Tyson believes that Kidd is not similarly situated to the consent-plaintiff Facundo, because Kidd was employed by Mexican Original while Facundo—the production supervisor in Amarillo, Texas—was employed by Fresh Meats. Tyson argues that their employment at different facilities is evidence that Kidd and Facundo are not

7

similarly situated, as the duties of a production supervisor working in the tortilla department are vastly different than a production supervisor's duties in a meat processing facility. Thus, in Tyson's view, a nationwide class will encompass employees who have "significant variation in Production Supervisor duties depending on the company, facility, shift, and department." *Id.* at pp. 26–27.

Having reviewed Kidd's Motion in light of the relevant standards and applicable factors, the Court finds that the evidence fails to justify certifying a nationwide class of Tyson production supervisors. Kidd has only shown that he is similarly situated to production supervisors working at the Mexican Original facility in Fayetteville during the relevant time period. His sworn declaration states that from September 2022 to April 2023 he worked as a production supervisor in Mexican Original's Fayetteville, Arkansas, facility, and that during this time he routinely worked more than 40 hours per week without receiving overtime pay. (Doc. 16-2, ¶¶ 4–5, 7–8). He spent the majority of his workday performing manual labor that was the same or similar to the work performed by hourly line workers; and he is personally familiar with other production supervisors at the Fayetteville facility whose duties and pay were similar to his own. *Id.* at ¶¶ 3–5, 7–8, 11, 14–20. Thus, Kidd has made a sufficient showing that he and other production supervisors working at Mexican Original's Fayetteville facility during the relevant period were subjected to a common policy or practice of misclassification, which deprived them of overtime wages under the FLSA.

Kidd has not met his burden of demonstrating that he is similarly situated to a nationwide collective of production supervisors working at all Tyson plants. His declaration does not show any personal knowledge of production supervisors' duties or

8

pay at other Tyson facilities. *See id.* at ¶¶ 4–6, 17–18. Outside of his declaration, the only other evidence he submits to support his request for a nationwide class are: (1) two consent forms filed by interested opt-in plaintiffs, (Doc. 2-3; Doc. 20-1); and (2) a non-party's sworn declaration that was filed in a different federal lawsuit in December 2024, (Doc. 16-3). The consent forms do not indicate where the purported opt-in plaintiffs work, nor do they demonstrate any broader knowledge of Tyson's nationwide practices. And much like Kidd's own declaration, the non-party's declaration states that he worked exclusively at "Tyson's chicken processing plant in Dexter, Missouri," and his "understanding of the Production Supervisor position at Tyson is based on [his] firsthand experience and observations that [he] had while working" and "from working with and/or talking with [his] coworkers." (Doc. 16-3, ¶¶ 4–6, 18–19). The non-party's declaration suffers from the same deficiencies as Kidd's in that it is confined to a single facility and thus does not justify certification on a nationwide basis.

Finally, Kidd's and Facundo's depositions—submitted to the court in Tyson's Response in Opposition (Doc. 21)—show that neither one is familiar with the duties of production supervisors *outside of their respective facilities*. *See* Doc. 21-3, 21:18–23 (Kidd. Dep.); 21-5, 40:23–41:3 (Facundo Dep.). Therefore, the Court is persuaded that a collective action is appropriate only with respect to the Fayetteville facility where Kidd worked as a production supervisor.[2] The following collective action is conditionally certified:

---

[2] The decision to limit the putative collective to only those production supervisors employed at the Mexican Original facility in Fayetteville during the relevant time period moots Tyson's Motion to Strike (Doc. 27). Tyson moved to strike new evidence that Kidd attached as exhibits to his Reply (Doc. 26) on grounds that it was improperly submitted

**All current or former Production Supervisors employed at the Tyson Mexican Original, Inc., facility in Fayetteville, Arkansas, from October 7, 2022 to the present who were paid a salary and did not receive overtime pay.**

As the Court has now limited the class to the Mexican Original plant, Tyson's argument that it is not the proper defendant warrants consideration. *See* Doc. 21, p. 7. To this point, the Court observes that Mexican Original is a wholly owned subsidiary of Tyson per Tyson's own corporate disclosure statement filed in this case. *See* Doc. 9, p. 1. Kidd has failed to address this issue entirely and, in arguing in the alternative, Tyson conceded that if the Court certified a class of production supervisors, then it should be limited to those employed by Mexican Original. (Doc. 21, p. 28). Accordingly, the parties are **ORDERED TO MEET AND CONFER** to identify the proper defendant.

With respect to the temporal scope referenced in the class definition, Tyson argues that the limitations period "should begin no earlier than three years prior to the date the Court rules on Plaintiff's Motion." (Doc. 21, p. 35). Tyson is correct that, ordinarily, the statute of limitations for FLSA claims runs from the date a collective action member files his or her notice of consent to join the lawsuit rather than from the date when the original complaint is filed. *See* 29 U.S.C. § 256(b); *see also Redman v. U.S. W. Bus. Res., Inc.*, 153 F.3d 691, 695 (8th Cir. 1998). Here, the Motion for Conditional Certification was filed on October 7, 2025, but this Court's Order on the Motion is being filed approximately six

---

in violation of the Federal Rules of Civil Procedure and this Court's local rules. The new evidence (Doc. 26-1, Doc. 26-2) pertains to the credibility of interested opt-in plaintiff Facundo's sworn testimony and seeks to address Tyson's argument that "[e]ither Plaintiff's counsel submitted false testimony or Macias testified falsely in this case," Doc. 21, p. 18. However, as the collective will not include opt-in plaintiff Facundo, Tyson's Motion will be denied as moot rather than considered on its merits.

months later. The question is whether the delay in resolving the Motion should be equitably tolled.

"Time requirements in lawsuits between private litigants are customarily subject to 'equitable tolling.'" *Irwin v. Dep't of Veteran Aff.*, 498 U.S. 89, 95 (1990) (quoting *Hallstrom v. Tillamook Cnty.*, 493 U.S. 20, 27 (1989)). "The doctrine of equitable tolling does not apply to 'garden variety' claims of excusable neglect, and should be invoked only in exceptional circumstances truly beyond the plaintiff's control." *Jenkins v. Mabus*, 646 F.3d 1023, 1028–29 (8th Cir. 2011). Whether to permit equitable tolling in an FLSA case is necessarily fact-specific. *See, e.g., Curless v. Great Am. Real Food Fast, Inc.*, 280 F.R.D. 429, 435 (S.D. Ill. 2012) (time tolled until court ruled on motion regarding discovery dispute, prior to filing motion for conditional certification); *Warren v. Twin Islands, LLC*, 2012 WL 346681, at *4 (D. Idaho Feb. 2, 2012) (time tolled until court ruled on motion that "remained pending for an unusually long time . . . through no fault of either party . . . "); *Putnam v. Galaxy 1 Mktg., Inc.*, 276 F.R.D. 264, 276 (S.D. Iowa 2011) (statute of limitations tolled during period of time that the motion for conditional certification was being considered); *Adams v. Tyson Foods, Inc.*, 2007 WL 1539325, at *1 (W.D. Ark. May 25, 2007) (FLSA action equitably tolled pending Multidistrict Litigation Panel's decision on transfer).

The Court finds it appropriate to toll the statute of limitations from October 7, 2025, until the date the Court grants the final approval of the notice to account for the unusually long delay between the filing of the Motion for Conditional Certification and the date the Court resolved it. Reviewing the procedural history, the Court granted Tyson's Unopposed Motion for Extension of Time to File a Response (Doc. 18) and Kidd's Motion

for Leave of Time to File a Reply (Doc. 24). Tyson subsequently filed a Motion to Strike Kidd's Reply (Doc. 27), to which Kidd filed his Response in Opposition (Doc. 33) on January 2, 2026. Considering these circumstances, the statute of limitations is tolled from October 7, 2025, until the date the final notice is approved. Any further matter of whether a particular plaintiff's claim is time-barred can be addressed at the time he or she joins this case.

## B. Notice

Having conditionally certified a collective, the Court must now approve the notice to be distributed to potential opt-in plaintiffs. The Court "ha[s] the discretion to manage the issuance of notice because the benefits derived from collective action dispute resolution 'depend on employees receiving accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate.'" *Coates v. Dassault Falcon Jet Corp.*, 2017 WL 5598219, at *4 (E.D. Ark. Nov. 21, 2017) (quoting *Hoffman-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989)).

First, the Court approves sending notice by regular mail and by email. Such forms of notice are typical in FLSA cases and consistent with this Court's approach in similar cases. Second, the Court approves sending a reminder notice to the collective by regular mail and email 30 days after the initial notice. Third, the approved notice may be posted at the Mexican Original facility in Fayetteville. Fourth, a 90-day opt-in period is reasonable under the circumstances. And fifth, the Court declines Tyson's invitation to appoint a third-party administrator to receive the potential opt-ins' contact information and disseminate the notice. Though Tyson worries that Kidd's counsel lacks "the necessary data security

12

protocols and protections in place to safeguard the private and confidential information of putative collective members," (Doc. 21, p. 41), the Court harbors no such concerns and presumes Kidd's counsel will safeguard such information in conformity with the letter and spirit of the parties' Protective Order (Doc. 11) and his ethical obligations to clients.

With respect to the text of the notice, Tyson objects to the wording in several places. *See* Doc. 21, pp. 36–39. The parties are ordered to meet and confer in good faith and come to an agreement as to the wording of the notice. No later than May 18, 2026, the parties should file an agreed motion to approve form of notice; if any lingering disputes remain, the parties should highlight them and request a ruling.

Lastly, as detailed below, Tyson is to provide Kidd with the contact information for the collective members no later than May 18, 2026.

### IV.  CONCLUSION

**IT IS HEREBY ORDERED** that Tyson's Motion to Strike (Doc. 27) is **DENIED AS MOOT** and Kidd's Motion for Conditional Certification (Doc. 16) is **GRANTED IN PART AND DENIED IN PART** as follows:

(1)     A collective defined as "**all current or former Production Supervisors employed at the Tyson Mexican Original, Inc., facility in Fayetteville, Arkansas, from October 7, 2022 to present who were paid a salary and did not receive overtime pay**" is conditionally certified as a collective action pursuant to 29 U.S.C. § 216(b).

(2)     The parties are **ORDERED** to meet and confer regarding the wording of the notice and the identity of the proper defendant, and to file an agreed motion of

13

approval of the form of notice, along with a proposed order, by no later than **May 18, 2026**.

(3)     Tyson is **ORDERED** to provide Kidd's counsel with contact information for the conditionally certified collective **no later than May 18, 2026**. The contact information should be in Excel (.xlsx) format and include each employee's full name; last known address with city, state, and zip code; last known e-mail address (non-company address if applicable); beginning dates of employment; and ending dates of employment (if applicable).

**IT IS SO ORDERED** on this 4th day of May, 2026.

 

_____
TIMOTHY L. BROOKS
CHIEF UNITED STATES DISTRICT JUDGE